| | | |
|---|---|---|
| CHAMBERS OF<br>THE HONORABLE GINA L. SIMMS<br>UNITED STATES MAGISTRATE JUDGE<br>MDD_GLSchambers@mdd.uscourts.gov |  | 6500 CHERRYWOOD LANE<br>GREENBELT, MARYLAND 20770<br>(301) 344-0627 PHONE<br>(301) 344-8434 FAX |

March 11, 2019

Paul R. Schlitz, Jr., Esq.
Mering & Schlitz LLC
343 North Charles Street, 3rd Fl.
Baltimore, MD 21201

Stacey W. Harris, Esq.
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd, Rm 617
Baltimore, MD 21235-6401

    Subject:    *Isaac B. v. Berryhill*[1]
                    Civil No.: 1:17-cv-03116-GLS

Dear Counsel:

       Pending before this Court, by the parties' consent, are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. (ECF Nos. 13, 18). The Court must uphold the Social Security Administration's ("SSA" or "Agency") decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, including Plaintiff's Reply memorandum (ECF No. 19), the Court finds that no hearing is necessary. Local Rule ("L.R.") 105.6. For the reasons set forth below, Plaintiff's motion is DENIED and Defendant's motion is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the judgment of the SSA is AFFIRMED.

**I.    BACKGROUND**

       Plaintiff filed a Title II Application for Disability Insurance Benefits on July 23, 2013, alleging a disability onset date of April 11, 2013. (Tr. 110). This claim was initially denied on January 29, 2014, and upon reconsideration, denied again on November 21, 2014. (*Id.*). Plaintiff's request for a hearing was granted and the hearing was conducted on April 27, 2016 by an Administrative Law Judge ("ALJ").[2] (Tr. 12; 52; 109). On October 31, 2016, the ALJ found that

---

    [1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

    [2] A supplemental hearing was held on October 6, 2016. (Tr. 110).

Plaintiff was disabled under § 1614(a)(3)(A) of the Social Security Act starting on June 15, 2016. (Tr. 106-133). Thus, the ALJ found that Plaintiff should be entitled to benefits beginning on that date. (Tr. 126-27). On November 27, 2017, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1–5). Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right of further review after the ALJ's decision becomes final and thus, filed his claim in this Court. (ECF No. 1).

## II. ANALYSIS TO BE PEFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if their "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 415.1520(a)(4)(i)-(v); 416.920. *See e.g., Bowen v. Yuckert,* 482 U.S. 137, 140-42 (1987); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assesses whether a claimant engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, the ALJ assesses the claimant's residual functional capacity ("RFC"), i.e., the most the claimant could do despite their limitations, through consideration of Plaintiff's "'medically determinable impairments of which [the ALJ is] aware', including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). At step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her impairments; and at step five, the ALJ analyzes whether a claimant could perform any work. At steps one through four, it is the claimant's burden to show that they are disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and therefore, is not disabled. *Id*. at 180.

In this case, the ALJ followed the sequential evaluation process. The ALJ found that, prior to April 11, 2013, the Plaintiff had the following severe impairments: diabetes mellitus; status-post left occipital ischemic stroke/cerebral vascular accident; right homonymous hemianopia; cataracts; gastroesophageal reflux disease/esophageal reflux; hiatal hernia; hepatitis C; alcoholic gastritis; pancreatitis; bipolar disorder; depression; anxiety; alcohol abuse; opiate dependence; cocaine dependence; and seizures. (Tr. 113). Considering those impairments, the ALJ determined

*Isaac B. v. Berryhill*
GLS-17-3116
March 11, 2019

that, prior to June 15, 2016[3] Plaintiff retained the RFC to perform medium work, but such work requiring only "occasional near and occasional far acuity and occasional peripheral vision." (Tr. 117). Following the testimony of a vocational expert ("VE"), the ALJ determined that, although Plaintiff had no relevant work history, Plaintiff was capable of making a successful adjustment to other work that existed in the national economy. (Tr. 125). Plaintiff was found not to be disabled prior to June 15, 2016. The ALJ found Plaintiff to be entitled to benefits after this date. (Tr. 126-27).

The issue before this Court is not whether the Plaintiff is disabled, but whether the ALJ's finding that he is not disabled before June 15, 2016 is supported by substantial evidence. *Craig*, 76 F.3d at 589; 42 U.S.C. § 405(g). Plaintiff argues that the ALJ's determination that he was not so disabled is erroneous. (ECF No. 13-1). The SSA counters that there is no genuine issue as to any material fact, and that the final decision is supported by substantial evidence. (ECF No. 18).

### III. DISCUSSION

#### A. Substantial Evidence Exists to Support ALJ's Disability Finding on Physical Limitation

Plaintiff first questions the ALJ's findings that his visual limitations prior to June 15, 2016, were "occasional near, far, or peripheral vision." (ECF No. 13-1, at 15-16). According to Plaintiff, he had "occasional peripheral vision" since 2012 after suffering a stroke, and thus was disabled. (*Id.*). Next, Plaintiff questions whether the ALJ considered his testimony that he ran into objects due to his loss of vision. (*Id.*).

The ALJ's determination is supported by substantial evidence in the form of Plaintiff's own medical evidence. The Supreme Court has held that, despite the severity of an impairment, a claimant will not meet the Listings if only some of the criteria related to an impairment are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Thus, to qualify under the Listings, the claimant "must meet *all* of the specified medical criteria." *Id*. (emphasis in original).

The ALJ determined that Plaintiff satisfied the Listings for visual impairment, 2.03B, on June 15, 2016, the date of Plaintiff's ophthalmological examination, and thus, was disabled. At that time, Plaintiff had a Central 30-2 visual field test, which revealed that the mean deviation in his right eye was -26.53 decibels and was -29.22 decibels on the left. (Tr. 126). The ALJ determined that the Plaintiff's visual impairment satisfied Listings 2.03B, which requires the contraction of the visual field in the better eye to have a mean deviation of 22 decibels or greater. (*Id.*). *See* 20 C.F.R Pt. 404, Subpt. P, App'x 1. Contrary to Plaintiff's argument, the record before the ALJ did not support a finding that Plaintiff qualified for a listing prior to June 15, 2016. Indeed, Plaintiff's last visual field test occurred in March 2013 and revealed that Plaintiff had a mean deviation of -21.12 decibels in his left eye and a mean deviation of -15.20 in the right eye. (Tr.

---
[3] This date represents the date of Plaintiff's visit to his ophthalmologist, during which test results revealed that his vision impairment qualified under the Listings. *See* Section III, *infra*.

3

119).

In urging against remand, the SSA avers that the ALJ accurately summarized the medical findings regarding Plaintiff's vision to support the non-disability finding before June 15, 2016. (ECF No. 18-1, at 6). The ALJ's evaluation and description of the evidence is comprehensive. In September 2012, Plaintiff began to experience a limitation in his visual field due to "a left occipital ischemic stroke/cerebral vascular accident." (Tr. 118). As a result of the stroke, Plaintiff had a "dense right homonymous hemianopia." (*Id*.). In early 2013, prior to the alleged onset date, Plaintiff underwent multiple vision examinations. At a February 2013 comprehensive visual examination, Plaintiff had no visual complaints and was only utilizing "over the counter readers for near vision." (Tr. 119; 747; 1186). As stated previously, a March 2013 examination revealed Plaintiff had a mean deviation of -21.12 decibels in his left eye, and a mean deviation of -15.20 decibels in his right eye. (Tr. 119; 1191). Reviewing Plaintiff's ophthalmological examinations from April 2013 and January 2014, Plaintiff had 20/30 vision in each eye and marked visual deficit due to the hemianopia, whereas in January 2014, Plaintiff had 20/30 on the right and 20/40 on the left. (Tr. 119; 1193). As the ALJ explained, the record "contained no detailed assessment of [Plaintiff's] visual field between April 2013 and June [15,] 2016." (Tr. 115; 119).

For the ALJ to have concluded that Plaintiff met a Listing prior to June 15, 2016 without substantial evidence to support such finding would require this Court to remand the case, as the ALJ's determination would be considered "wholly arbitrary." *See Bailey v. Chater*, 68 F.3d 75, 80 (4th Cir. 1995) (remanding case where ALJ arbitrarily determined disability onset date was six months prior to date supported by medical evidence). The ALJ's findings that the Plaintiff did not satisfy a Listing criterion prior to June 15, 2016 were amply supported by the medical records. (*See* Tr. 118-19). Accordingly, the ALJ did not err.

Plaintiff next avers that the ALJ failed to consider his testimony that he runs into objects because of his vision loss. Contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's testimony concerning his vision problems and included this consideration in the findings. The ALJ explained that she considered medical and nonmedical evidence, including Plaintiff's testimony that "described difficulties with his vision, which caused him to move more slowly, to bump into people or things, and to trip." (Tr. 118). Evaluating Plaintiff's testimony, the ALJ determined that Plaintiff's "limited visual field would reasonably limit him to occasional peripheral vision, work avoiding hazards, and no driving," but also that Plaintiff's vision was "limited to occasional near and far acuity." (Tr. 119). Moreover, the ALJ accounted for such visual limitation in Plaintiff's RFC by limiting Plaintiff's work to jobs only requiring "occasional near and occasional far acuity and occasional peripheral vision." (Tr. 117). Plaintiff's visual limitations were also utilized in the hypothetical scenarios asked of the VE, who then testified that Plaintiff would be able to perform jobs such as a linen room attendant, laundry work, hand packer, and dishwasher. (Tr. 125; 41-43). Accordingly, the ALJ did not err.

### B. **Evaluation of the Two Mental Health Professionals' Opinions**

Plaintiff also contends that the ALJ improperly disregarded the opinions of the only two

mental health professionals who reviewed his entire medical record. (ECF No. 13-1, at 17). Specifically, Plaintiff asserts that the ALJ: (a) failed to note that the opinions of Drs. Ansel and Len were consistent with each other; (b) failed to identify specific examples demonstrating how these doctors' opinions were inconsistent with all or some of Plaintiff's medical records; (c) failed to explain how she could accord "some weight" to the opinion of Dr. Len, yet still conclude that Plaintiff did not meet any mental impairment Listings; and (d) erred by supplanting her judgment for that of Drs. Ansel and Dr. Len by not considering Dr. Len's opinion regarding the disability onset date related to Plaintiff's mental impairments. (*Id.* at 17 – 18). The SSA counters that the ALJ properly explained the weight she accorded to the opinions of Drs. Ansel and Len, and that the ALJ was not required to "accept Dr. Len's finding merely because she was a medical expert," but is required to form her decision from all of the evidence within the record. (ECF No. 18-1, at 8-9).

### 1. Factual Background

Dr. Edward Ansel, a psychologist, examined Plaintiff only once on April 14, 2016. (Tr. 648). Dr. Ansel conducted a WAIS-IV test and comprehensive mental status examination. (Tr. 121; 648). Dr. Ansel's behavioral observations of Plaintiff were based upon information provided by Plaintiff. (Tr. 121; 648-49). From the information received and test results, Dr. Ansel deduced that Plaintiff had "been suffering from severe depressive and anxiety disorders including panic attacks that have resulted in at least moderate agoraphobia and severe agoraphobia for periods of up to three days at a time," and that Plaintiff had "been exhibiting an alcohol use disorder as form of self-medication for his depression." (Tr. 650). Dr. Ansel diagnosed Plaintiff with "Major neurocognitive disorder due to multiple etiologies," as well as "Major depressive disorder." (*Id.*). Dr. Ansel opined: "Due to the foregoing, [Plaintiff] is incapable of participating in substantial gainful employment. He is competent to manage any benefits that might be awarded, however." (*Id.*).

Appearing by telephone for the October 2016 hearing, Dr. Cheryl Len[4], a New York-based psychologist, was an independent medical expert. (Tr. 30; 251). Dr. Len had not treated or examined Plaintiff, but rather testified based upon her review of Plaintiff's medical records and Plaintiff's October 6, 2016 testimony. (Tr. 32). Addressing Plaintiff's impairments, Dr. Len opined that Plaintiff met "a number of diagnostic categories," i.e., Listings 12.02, "organic mental disorder" and 12.04 "affective disorder." (Tr. 34-35). Dr. Len's opinions were predicated upon "the most recent psychological evaluations," including Plaintiff's April 2016 mental evaluation with Dr. Ansel. (Tr. 35; 40). Dr. Len opined that Plaintiff had met Listings 12.02 since 2012. (Tr. 35; 38). Although she could not pinpoint an exact date on when she believed Plaintiff met Listings 12.04, Dr. Len further opined that it was "probably [Plaintiff's] first psychiatric hospitalization." (Tr. 38). Dr. Len was unable to recall if there were any findings or opinions within the record that were conflicting or inconsistent. She stated: "[e]verything I saw seemed to agree actually with the assessments that I made before unless you've seen something or the attorney has seen something

---

[4] In the parties' memoranda and record, the spelling of Dr. Len's last name varies. For purposes of this opinion, I will adopt the spelling used in the ALJ's decision.

*Isaac B. v. Berryhill*
GLS-17-3116
March 11, 2019

that conflicts with that." (Tr. 39-40).

### 2. *Consideration of Medical Opinions*

Pursuant to 20 C.F.R. § 404.1527(c)(3), "the weight [SSA] will give . . . medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." A medical opinion must be consistent "with the record as a whole,'" and that consistency is "a factor to be used to determine the weight to be given any other medical opinion, whether from a treating source not accorded controlling weight or from a nontreating source." *See Brown v. Comm'r, Soc. Sec. Admin.*, 873 F.3d 251 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(4)).[5]

Plaintiff first contends that the opinions of Drs. Ansel and Len are consistent and that the ALJ failed to explain how each are inconsistent with the record. A review of the record reveals that the ALJ held that Dr. Len exclusively relied upon Dr. Ansel's findings. (Tr. 124). The ALJ explained that she would accord "some weight" to Dr. Len's opinion because of her consistency with Dr. Ansel's findings. (*Id.*). Thus, contrary to Plaintiff's argument, the ALJ did recognize that the opinions were consistent with each other. However, the ALJ also explained that, because Dr. Ansel's opinion only accounted for Plaintiff's reported symptoms through April 2016, Dr. Ansel's opinion was "highly inconsistent" with the rest of Plaintiff's medical records, which reflected additional treatment and observations from other physicians after that time, namely on April 15, 2016 and May 10, 2016. (Tr. 123; 957; 1222). According to the ALJ, those records cast doubt that Plaintiff suffered from mental impairments. (Tr.122). The ALJ fully explained why the opinions of Drs. Ansel and Len were inconsistent with the rest of Plaintiff's medical records. For example, the ALJ explained that Dr. Ansel's findings significantly differed from those related to Plaintiff's April 15, 2016 neurology exam. (Tr. 122; 957-59). Relying on the May 10, 2016 examination records from Plaintiff's primary care physician, the ALJ stated that Plaintiff "complained of depression, but stated he did not want to return to therapy." (Tr. 122; 1222). At that time, Plaintiff's "mood, memory, affect, and judgment" were all normal. (*Id.*). In addition, the ALJ explained that, although Plaintiff told Dr. Ansel that he had been receiving mental health treatment since 2012, Plaintiff's medical records revealed that he had not "engage[d] in any regular treatment consistent with the degree of his alleged symptoms." (Tr. 122). The ALJ explained that: Dr. Len "did not see any findings in the record that were conflicting or inconsistent, despite the [Plaintiff's] lack of consistent mental health treatment, and the inconsistent findings of the [Plaintiff's] primary care and neurology providers around the time of Dr. Ansel's examination." (Tr. 124). For those reasons, the ALJ concluded that, as to both opinions, she would only accord "some weight as to the severity of [Plaintiff's] impairments." (Tr. 123-24).

---

[5] A "treating source" is defined as someone the claimant sees, or has seen, with frequency consistent with accepted medical practice for the type of treatment and evaluation required of the claimant's medical condition. 20 CFR § 404.1527(a)(2). Where a medical source is chosen as a treating source solely based on the claimant's need to obtain to a report to support their claim for disability, the Agency will not recognize that treating source as an acceptable medical source. *Id.*

6

*Isaac B. v. Berryhill*
GLS-17-3116
March 11, 2019

Plaintiff further contends that the ALJ failed to explain how she could accord "some weight" to the opinion of Dr. Len, yet still conclude that Plaintiff did not have a mental disability. However, the ALJ explained that the aforementioned inconsistencies contained in Dr. Len's opinion, as well as the fact that Dr. Len was not Plaintiff's treating physician, were the reasons why she only credited Dr. Len's opinion as to the severity of Plaintiff's mental impairments. (Tr. 124).[6]

Plaintiff finally asserts that the ALJ erred by supplanting her opinion regarding Plaintiff's disability onset date rather than utilizing the date ascertained by Dr. Len from 2012. (ECF No. 13-1 at 18). Plaintiff relies on *Bird v. Comm'r, Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012) and *Bailey v. Chater*, 68 F.3d 75 (4th Cir. 1995) to support his proposition.

Although Plaintiff does not refer to Social Security Ruling ("SSR") 83-20, this ruling provides the guidelines for the process of establishing a disability onset date. *See* SSR 83-20, 1983 WL 31249 (Jan. 1, 1983).[7] The Fourth Circuit instructs that, after considering all relevant evidence and upon making its determination that claimant is disabled at any time, the ALJ must then "consult with a medical advisor if the date of the onset disability is ambiguous." *Bird,* 699 F.3d at 345. A court in this District has interpreted this to mean that the "ALJ must first determine that a claimant is disabled before turning to SSR 83-20." *Yu v. Comm'r, Soc. Sec. Admin.*, No. ELH-13-1507, 2014 WL 1022878, at *3-4 (D.Md. Mar. 14, 2014).

Here, the ALJ determined that the medical and nonmedical evidence did not support a finding that Plaintiff was mentally disabled; thus, because the only disability finding resulted from Plaintiff's visual impairment, the ALJ's finding of a disability onset date of June 15, 2016 is correct. On this basis, the next step of following SSR 83-20 to ascertain the disability onset date was unnecessary. Thus, there was no need for the ALJ to adopt Dr. Len's testimony regarding Plaintiff's mental disability onset date.[8]

In sum, I conclude that substantial evidence exists to support the ALJ's findings regarding a physical disability onset date of June 15, 2016 and no finding of mental disability.

---

[6] Plaintiff's argument also ignores the regulations governing "medical source opinions," which clearly state that "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the SSA] will determine that [a claimant is] disabled." 20 C.F.R. § 404.1527(d)(1). Although the ALJ is permitted to consider testimony from a medical source on issues such as whether a claimant's impairments meet or equals the Listings, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R §§ 404.1527(d)(2), (f).

[7] The purpose of SSR 83-20 is to "state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act and implementing regulations." SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983).

[8] Alternatively, Plaintiff avers that the ALJ evaluated the opinions of other treating physicians in a manner that was improper, specifically that the ALJ dismissed the opinions of the other treating physicians and only relied "on her own lay assessment." (ECF No. 13-1, at 18). Contrary to this assertion, the ALJ clearly explained why she accorded weight to each of Plaintiff's treating physicians, including, among many others, Drs. Kang, Gary Baziz, Erik Sass, James Carr, and Lisa Steiner. (*See* Tr. 120-24).

*Isaac B. v. Berryhill*
GLS-17-3116
March 11, 2019

  For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 13), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 18), is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFRIMED. The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                Sincerely,

                /s/
                The Honorable Gina L. Simms
                United States Magistrate Judge